**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**FRANKLIN CHURCH (#613285)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 22-426-SDD-SDJ**

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on July 31, 2025.

*/s/ Scott Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FRANKLIN CHURCH (#613285)

VERSUS

DARREL VANNOY, ET AL.

CIVIL ACTION

NO. 22-426-SDD-SDJ

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed an opposition to Petitioner's application. *See* R. Doc. 10. There is no need for oral argument or for an evidentiary hearing.

On June 24, 2022, the *pro se* Petitioner, an inmate confined at Louisiana State Penitentiary in Angola, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2013 criminal conviction for one count of computer-aided solicitation and indecent behavior with a juvenile each, and seven additional counts of indecent behavior with a juvenile. Petitioner asserts that his trial was unfair due to the introduction of other crimes evidence and evidence obtained via an illegal search of his vehicle. Petitioner also asserts that he was subjected to double jeopardy and that his sentence is excessive.

**Procedural History**

On June 14, 2013, after a jury trial, Petitioner was found guilty of one count of computer-aided solicitation and indecent behavior with a juvenile each, and seven additional counts of indecent behavior with a juvenile. He was sentenced to 63 years imprisonment on June 27, 2013. Petitioner filed a direct appeal with the Louisiana First Circuit Court of Appeal, arguing that the trial court erred in allowing the introduction of other crimes evidence, his sentence was excessive, and the evidence was insufficient. The First Circuit affirmed Petitioner's conviction and sentence

on September 24, 2014. Petitioner sought further review with the Louisiana Supreme Court, which was denied on August 28, 2015.

On December 15, 2015, Petitioner filed an application for post-conviction relief, asserting the same three claims asserted in his direct appeal and claims for ineffective assistance of counsel. All claims were dismissed on December 21, 2021. The instant petition was filed on June 24, 2022.

## Exhaustion and Procedural Default

The respondents argue that Petitioner's Claims 1 and 2, that other crimes evidence was wrongfully admitted at trial and that his sentence is excessive and illegal, are procedurally barred because they are unexhausted. Respondents argue that Claim 1 was presented to the state courts, relying exclusively on Louisiana statutes and case law, consequently Petitioner never fairly presented a federal claim in the state courts. With regards to Claim 2, the respondents argue that this claim was never considered on the merits by the state courts.

A habeas applicant must claim a violation of a federal constitutional right. A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."); *Narvais v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

The exhaustion requirement is based on the statutory provision that a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The requirement is designed to give the state courts a first opportunity to correct alleged violations of federal rights. *Baldwin v. Reese*, 541 U.S. 27 (2004). To satisfy it, a prisoner must fairly present his federal claim in each appropriate state

court (including a state supreme court with powers of discretionary review), thereby alerting the state courts to the federal nature of the claim. *Id*.; *O'Sullivan v. Boerckel*, 528 U.S. 838, 844 (1999).

State courts are obligated to enforce federal law, so "they must be given the first chance—after the state prisoner fully explains the federal claim—to correct any error." *Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021). The federal claim must be fairly presented to the state courts to allow them that opportunity, and a prisoner may not change the nature of his claim from state to federal law along the way. *Lucio* cited the example of *Duncan v. Henry*, 513 U.S. 364, where the petitioner framed his objection in state court in terms of state evidentiary law, but in the federal courts he argued that the erroneous introduction of the evidence violated the Due Process Clause. The Supreme Court held that the petitioner did not properly exhaust his Due Process Clause claim, even if he presented the state court with the facts and substance of his claim in other terms.

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996). And "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* at 163. The determination of whether a federal claim was fairly presented to the state courts is made by looking to the petitioner's briefs filed in state court (rather than the state court's decision). *Dye v. Hofbauer*, 546 U.S. 1 (2005); *Smith v. Digmon*, 434 U.S. 332 (1978).

With regards to Claim 1, Petitioner's instant Memorandum mirrors his state court pleadings. Petitioner relies exclusively on Louisiana law. Petitioner cites two federal cases only in the context that the Louisiana courts have adopted the tests for harmless error enunciated therein. Petitioner argues that the state court's application of state law was not harmless error. As such,

Petitioner did not fairly present a federal claim to the state court that would satisfy the requirement to exhaust state court remedies.

Turning to Claim 2, when a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine. *Castille v. Peoples,* 489 U.S. 346 (1989); *Satterwhite v. Lynaugh,* 886 F.2d 90, 92–93 (5th Cir.1989). Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Magouirk v. Phillips,* 144 F.3d 348, 360 (5th Cir. 1998), *citing Richardson v. Procunier,* 762 F.2d 429, 431–32 (5th Cir. 1985). Such presentment can be accomplished on direct appeal or state collateral or *habeas* proceedings. *Morris v. Dretke,* 413 F.3d 484, 491 (5th Cir. 2005) *citing Orman v. Cain,* 228 F.3d 616, 620 (5th Cir. 2000). In Louisiana, the highest court is the Louisiana Supreme Court. Thus, to properly exhaust a claim, a federal *habeas corpus* petitioner must have fairly presented the substance of the claim in a procedurally correct manner to the Louisiana Supreme Court in either direct appeal or in post-conviction proceedings.

Claim 2 was presented to the state appellate court on direct appeal; however, this claim was denied on procedural grounds because it was not properly preserved at the trial court level. Petitioner again presented this claim in his Application for Post Conviction Relief but did not seek further review of the denial of this claim in the state court of appeal or the Louisiana Supreme Court. As such, this claim has never been presented to state's highest court.

If Petitioner were to return to state court and attempt to properly exhaust this claim, his PCR application would not be considered pursuant to Louisiana Code of Criminal Procedure

article 930.4(D), which provides: "A successive application shall be dismissed if fails to raise a new or different claim." As such, the claim is procedurally defaulted.

In such cases, the federal court is to treat the issue as technically exhausted but subject to a procedural bar that cannot be overcome absent the showing of cause for the default and prejudice, or a fundamental miscarriage of justice. *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016); *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998). "To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999). There are no such apparent causes for Petitioner's election to not pursue his claim in the Louisiana Supreme Court.

To satisfy the fundamental miscarriage of justice exception, a petitioner must make a persuasive showing that he is actually innocent of the charges against him. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner is not asserting a claim of actual innocence herein. As such, Claim 2 is procedurally barred from review due to Petitioner's failure to exhaust state court remedies with respect to a federal claim and the lack of a showing adequate to overcome the resulting procedural bar. Accordingly, the Court will only consider Claims 3 and 4 on the merits.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary

to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal are as follows: In October of 2010, the mother of thirteen-year-old R.B. learned that R.B. had been texting and talking on Facebook to the defendant, who was forty-four years old. R.B.'s mother read a text on R.B.'s cell phone from the defendant instructing R.B. to delete the texts between them. R.B.'s mother called the police, who went to her home in Livingston, Louisiana. One police officer read a text from the defendant on R.B.'s cell phone asking if she was a virgin. The police monitored R.B.'s Facebook account and observed that the defendant was writing to R.B. asking to meet her and asking if she could walk outside of her house so that he could see her.

The defendant also wrote to R.B. that he would get her cigarettes in exchange for inappropriate sexual activity.

Posing as R.B., the police responded on Facebook that R.B. would meet him at the ballpark near her home. Chief Randy Dufrene and Officer Wade Stanberry, both with the Livingston Police Department, and Corporal Calvin Bowen, with the Livingston Parish Sheriff's Office, drove to the ballpark at the designated meeting time and found the defendant parked at the ballpark in his work truck, facing R.B.'s house. The defendant had an opened laptop computer in his lap. When he saw the police, the defendant closed his laptop computer and tossed it on the passenger seat. He attempted to back up, but his truck was hemmed in. When he exited his truck, the defendant refused to be placed in handcuffs and resisted arrest until he was finally pepper sprayed, taken to the ground, and subdued; his laptop computer was seized. In the defendant's truck, the police found handcuffs, a condom wrapper, and a brand new pack of Marlboro smooth menthol cigarettes. The defendant was not known to smoke. The defendant was arrested, subsequently bonded out of jail, and was ordered to stay away from R.B.

In early 2012, the defendant and R.B. began texting and communicating again on Facebook, both using bogus account names. R.B. began sneaking out of her house to have sex (vaginal, oral, and attempted anal) with the defendant in a truck. Soon, R.B. was meeting the defendant at his house in Holden, Louisiana, where he continued to have sex with her. R.B.'s mother learned what R.B. was doing, this time through Kindle texting, and called the police. R.B. was interviewed at the Children's Advocacy Center in Denham Springs, Louisiana, where she described the various sexual acts in which she had engaged with the defendant. R.B. also testified at trial about the sexual acts between her and the defendant over a period of several months in 2012.

The defendant's sister and three of his female cousins testified at trial. All four witnesses, now adults, testified that, when they were children, the defendant sexually abused them, and the abuse lasted for years. V.O., a friend of the defendant's son also testified at trial. According to her testimony, when she was thirteen years old, she was inside the defendant's residence when the defendant approached her and began fondling her. He pulled off her shorts and underwear and inserted a sexual device in her vagina. The defendant did not testify at trial. *State v. Church,* 2014 WL 4742220, 2013-2096 (La. App. 1 Cir. 9/24/14).

## Substantive Review

### *Claim 3 – Illegal Search*

In Claim 3 Petitioner asserts that his truck was illegally searched, and the evidence seized should not have been admitted at trial. He further asserts that his counsel was ineffective for failing to move to suppress this evidence. As to the suppression component of his claim, Petitioner is clearly precluded from litigating his underlying Fourth Amendment claims in this federal court. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnote omitted)); *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."); *Bailey v. Cain*, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ("It is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."). However, it is equally

clear that "*Stone v. Powell* does not bar an ineffective assistance of counsel claim on habeas review based on an attorney's failure to adequately litigate a Fourth Amendment claim." *Moreno v. Dretke*, 450 F.3d 158, 168 n.6 (5th Cir. 2006) (*citing Kimmelman v. Morrison*, 477 U.S. 365 (1986)). Because review of the Fourth Amendment claim is barred by the *Stone* doctrine, this aspect of Petitioner's claim must be dismissed.

Turning to Petitioner's claim that his counsel was ineffective for failing to file a motion to suppress, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of

professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Police may search a vehicle incident to a recent occupant's arrest only if it is reasonable to believe the vehicle contains evidence of the offense of arrest. As stated by the Court in *Arizona v. Gant*, 556 U.S. 332, 343-344 (2009):

> "…circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton,* 541 U.S., at 632, 124 S.Ct. 2127 (SCALIA, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, *e.g.,* *344 *Atwater v. Lago Vista,* 532 U.S. 318, 324, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *Knowles v. Iowa,* 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). But in others, including *Belton* and *Thornton,* the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

In the instant matter, the likelihood of discovering offense-related evidence authorized the search in this case. The police were monitoring R.B.'s Facebook account and observed that Petitioner was writing to R.B. asking to meet her, and also wrote to R.B. that he would get her cigarettes in exchange for inappropriate sexual activity.

Posing as R.B., the police responded on Facebook that R.B. would meet him at the ballpark near her home. Chief Randy Dufrene and Officer Wade Stanberry, both with the Livingston Police Department, and Corporal Calvin Bowen, with the Livingston Parish Sheriff's Office, drove to the ballpark at the designated meeting time and found Petitioner parked at the ballpark in his work truck, facing R.B.'s house. Petitioner had an opened laptop computer in his lap. When he saw the police, Petitioner closed his laptop computer and tossed it on the passenger seat. He attempted to back up, but his truck was hemmed in. When he exited his truck, Petitioner refused to be placed in handcuffs and resisted arrest until he was finally pepper sprayed, taken to the ground, and subdued; his laptop computer was seized. In Petitioner's truck, the police found handcuffs, a condom wrapper, and a brand-new pack of Marlboro smooth menthol cigarettes. Pefendant was not known to smoke.

As such, the likelihood of discovering offense related (computer aided solicitation and indecent behavior with a juvenile) evidence authorized the search of Petitioner's vehicle. As such, there was no basis for a motion to suppress, and the failure to raise meritless motions or to make meritless objections does not result in the ineffective assistance of counsel. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Accordingly, this claim is without merit.

### *Claim 4 – Double Jeopardy*

In Claim 4, Petitioner alleges it was a violation of the Double Jeopardy Clause to convict him on all counts because the evidence for any one count would be sufficient to sustain a

conviction on any other count resulting in a multiplicitous prosecution. He argues that under *Blockburger v. United States,* 284 U.S. 299 (1932) and Louisiana's same evidence test, he has received multiple punishments for the same conduct.

Petitioner was charged by bill of information with nine counts of indecent behavior with juveniles, violations of Louisiana Revised Statute 14:81. Louisiana Revised Statute 14:81 provides, in pertinent part:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense; or
> (2) The transmission, delivery or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

In counts 1 and 4 through 9, Petitioner was charged under La. R.S. 14:81(A)(1). In counts 2 and 3, Petitioner was charged under La. R.S. 14:81(A)(2). The victim in count 1 is V.O. The victim in all other counts is R.B. Petitioner was found guilty as charged on all counts. For each conviction, he was sentenced to seven years imprisonment at hard labor. All nine sentences were ordered to run consecutively to each other.

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). A challenge to multiplicity raises double jeopardy concerns, which would protect a defendant against multiple punishments for the same offense where the legislature did not authorize cumulative punishment for one offense. *United States v. Ogba,* 526 F.3d 214, 232–33

(5th Cir. 2008). " 'An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment double jeopardy clause.' " *United States v. Reagan,* 596 F.3d 251, 253 (5th Cir. 2010) (quoting *United States v. Brechtel,* 997 F.2d 1108, 1112 (5th Cir. 1993)); *United States v. Soape,* 169 F.3d 257, 266 (5th Cir. 1999) (citing *United States v. Nguyen,* 28 F.3d 477, 482 (5th Cir. 1994)). "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Cluck,* 143 F.3d 174, 179 (5th Cir. 1998) (quoting *United States v. Swaim,* 757 F.2d 1530, 1537 (5th Cir. 1985)).

Where the question of multiplicity arises, as here, because of multiple transactions, the question becomes "'whether separate and distinct prohibited acts, made punishable by law, have been committed.'" *United States v. Lee,* No. 08–0148, 2009 WL 481264, at *1 (E.D. La. Feb. 20, 2009) (citing *United States v. Cluck,* 143 F.2d at 179). Separate and distinct acts that occurred at different times–even if committed against the same person–may constitute offenses independently punishable under a single statute. *Blockburger v. United States*, 284 U.S. 299, 301-302 (1999). An overall scheme does not preclude multiple convictions based on each instance of misconduct under that scheme. *United States v. Johnson*, 1 F.3d 1237 (5th Cir. 1993).

In the instant matter, the state appellate court detailed the various acts and communications that occurred on multiple different occasions over a period of months and discussed in detail the evidence supporting each count. These separate and distinct acts committed against R.B. are offenses that are independently punishable under a single statute. Likewise, the separate act committed against the second victim, V.O., is also independently punishable under the same statute. As such, Petitioner has not established that the separate counts charged by the State for

separate acts occurring on different days were multiplicitous or violative of the double jeopardy clause. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law, and Petitioner is not entitled to relief on this claim.

## Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## RECOMMENDATION

It is recommended that Petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed. It is further recommended that, in the event Petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on July 31, 2025.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**